

**SO ORDERED.**

**SIGNED this 13 day of April, 2007.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **CAROL CURINGTON GREEN** | **06-01948-5-ATS** |
| **TERRY MIKE GREEN** | |
| **DEBTORS** | |

### ORDER REGARDING MOTION FOR SHOW CAUSE ORDER

The matter before the court is the debtors' motion for Re-New Hearth & Fire, LLC and its principal, E. Glenn Johnston, to show cause why the automatic stay has not been violated. A hearing took place in Raleigh, North Carolina on April 10, 2007.

Carol Curington Green and Terry Mike Green filed a joint petition for relief under chapter 7 of the Bankruptcy Code on November 30, 2006. Mr. Green was the principal of Mike Green Builders, Inc., which operated as a general contractor for residential construction. In 2006, Re-New installed fireplaces in seven houses built by Mike Green Builders, and on July 28, 2006, Mr. Green delivered a check to Re-New, Check No. 2061, in the amount of $5,390. Ex. G-1. Mr. Green advised Re-New that the check would be covered by some upcoming sale closings, and asked that it not be deposited until after the closings. At the closings, however, one of Mr. Green's creditors seized the sale proceeds such that the

funds were never available to cover the check to Re-New. Re-New attempted to negotiate the check on August 4, 2006, but it was returned for insufficient funds. Re-New again attempted to negotiate the check in December 2006, but it still was not honored.

Mr. Green listed Re-New as an unsecured creditor with a claim in the amount of $5,425 in his bankruptcy schedules. After Re-New tried to negotiate the check in December 2006, Mr. Green's attorney, Ryan Dyson, sent Re-New a letter dated January 11, 2007, advising Re-New of Mr. Green's bankruptcy and contending that the attempt to negotiate the check may have violated the automatic stay. Specifically, the letter stated

> Check #2061 given by Debtor to ReNew Hearth & Fire, LLC on July 28, 2006, was presented to the Debtor's bank for payment on December 8, 2006. Notices of the Debtor's bankruptcy filing were mailed out by the Bankruptcy Court on December 1, 2006. Please be advised that your actions are believed to be in violation of the automatic stay . . . .

Ex. G-4. On January 17, 2007, Rosemary Charles of Re-New contacted Mr. Dyson's office, indicating that Mr. Green had called Re-New several times about the debt owed to Re-New. Because Mr. Johnston (Re-New's principal) knew of Mr. Green's bankruptcy, he wanted Mr. Dyson's permission to return Mr. Green's calls. Ms. Charles also advised Mr. Dyson's office that Re-New was pursuing criminal charges for the bad check. Ex. G-5.

In fact, Re-New did provide Check No. 2061 to the Wake County authorities. Mr. Johnston testified that Ms. Charles delivered the check to the authorities prior to receiving the January 11, 2007, letter from Mr. Dyson. A warrant for Mr. Green's arrest was issued on January 23, 2007, and Mr. Green was arrested and processed on January 26, 2007. Ex. G-6. The charges were dismissed on February 19, 2007. Ex. G-7.

Mr. Green contends that the criminal prosecution was a willful violation of the automatic stay deserving of significant sanctions. Re-New denies that there was a stay in place with respect to this debt because the check was drawn on the account of Mike Green Builders, Inc., Mr. Green had no personal liability for the debt, and Re-New made no effort to pursue Mr. Green individually and did not report the check to the authorities for the purpose of collecting the debt.

Clearly the check was drawn on the account of Mike Green Builders, Inc., and was presented to the corporation's bank for payment. Mr. Green testified that he does not even have a personal bank account. Mr. Johnston testified that no other information, besides the check itself, was provided to the Wake County authorities. He further testified that he was not involved in the issuance of the arrest warrant or the prosecution of Mr. Green, nor did he know that Mr. Green individually would be prosecuted when the check was provided to the authorities. Mr. Johnston contends that his company has only conducted business with Mike Green Builders, Inc., and that he had never met Mr. Green prior to the hearing on April 10, 2007.

Mr. Green contends that Mr. Johnston should have been on notice that the authorities were pursuing Mr. Green individually when Mr. Johnston completed a "Victim Impact Statement" that indicated Mr. Green was the criminal defendant. Ex. G-14. Mr. Green also contends that Mr. Johnston had a duty to advise the authorities that the individual principal of Mike Green Builders, Inc., was in bankruptcy and should not be prosecuted individually. Mr. Green further suggested that because Mr. Green listed the stock of Mike Green Builders, Inc. as an asset on his bankruptcy petition, Re-New had an obligation to advise the trustee that it intended to pursue criminal charges for the worthless check.

3

Mr. Green also insists that Re-New repeatedly failed to distinguish between Mike Green Builders, Inc. and Mr. Green. Antonia Gilbride, an assistant in Mr. Dyson's office, testified with respect to her memorandum related to a telephone conversation with Ms. Charles, Ex. G-5, and said that she believed Re-New was pursuing criminal charges against Mr. Green individually.[1] At the same time, however, Ms. Gilbride authored the letter dated January 11, 2007, which states that Re-New attempted to collect on a check given by "the Debtor" at the "Debtor's bank." Ex. G-4. In addition, the motion to show cause nowhere indicates that the check was written on the corporate account and that Mr. Green had no individual liability on the debt. And finally, the debt was listed on Mr. Green's bankruptcy schedules though he was in no way liable for the debt. It appears that Mr. Dyson's office failed to acknowledge the distinction between Mr. Green and his corporation, but there is no persuasive evidence that Re-New also blurred the distinction.

To the contrary, Mr. Johnston testified that he has dealt with individuals in bankruptcy before, that he understands the automatic stay, and that he never expected to collect the debt represented by the check. When Mr. Green called Re-New about reducing the amount of the debt, Mr. Johnston asked Ms. Charles to call Mr. Dyson to determine whether Mr. Johnston could return Mr. Green's phone calls. This is consistent with an effort to observe, not violate, the automatic stay. Mr. Johnston credibly testified that he had never reported a worthless check before, and that he did not know the procedure or how the authorities would prosecute for a corporate account, and the court finds that Mr. Johnston and Re-New

---

[1] Even this communication does not appear to have been an attempt to collect a debt. According to Mr. Johnston, the worthless check had already been reported to the authorities, and informing Ms. Gilbride of the prosecution was not a threat or an indication that the prosecution was tied to collection of the debt.

did not take any action with the intention of having Mr. Green arrested and prosecuted individually. Any mistake in prosecuting Mr. Green individually appears to have been by the district attorney, magistrate judge or the process, not by Re-New or Mr. Johnston. The court further finds that filling out the Victim Impact Statement was not an attempt to collect the debt or a knowing violation of the stay. The court disagrees that Re-New had an obligation to notify the authorities of Mr. Green's bankruptcy or to notify the trustee that it was pursuing collection against a corporation whose stock is an asset of the estate.[2]

Based on the foregoing, the court concludes that there was no willful violation of the automatic stay, and the motion to show cause is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**

---

[2] To impose these obligations on a creditor might create an impossible burden; had Mr. Green not listed Re-New in his schedules, Re-New would not even have known about the bankruptcy. Most individual debtors do not list debts for which they are not liable on their petitions, and most corporate creditors would likely not know of the individual bankruptcy of a principal of the corporate debtor.